IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID SLUSHER, | ) | CASE NO. 3:09-CV-2497 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to consent of the parties (Doc. 11). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff David Slusher's application for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

On June 13, 2003, Plaintiff filed an application for Disability Insurance Benefits alleging that he became disabled on March 1, 2002, due to back problems and seizures (Tr. 58-60, 108, 117). Plaintiff's date last insured for purposes of his disability benefits application was December 31, 2007 (Tr. 108). Plaintiff's application was denied initially and upon reconsideration (Tr. 40-42). Plaintiff timely requested and was granted an administrative hearing (Tr. 37-39). On November 15, 2006, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Barbara

L. Beran (the "ALJ" or "ALJ Beran") (Tr. 823-82). Medical expert, Dr. Jonathan W. Nusbaum, and vocational expert, Mr. Richard P. Oestreich, testified at the hearing (Tr. 869-82). Following the hearing, Plaintiff's counsel submitted a log to the ALJ listing Plaintiff's self-reported seizures from June of 2006 through November of 2006 (Tr. 146-51).

The ALJ issued an unfavorable written decision on June 26, 2007, in which she found at Step Four of the five-step sequential evaluation[1] that Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work as an order picker at the light exertional level, and as a painter at the sedentary exertional level and therefore, was not disabled (Tr. 15-30). Plaintiff requested review of the ALJ's decision from the Appeals Council. On August 27, 2009, the Appeals

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Council denied Plaintiff's request, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 7-9).  Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g).

Plaintiff was thirty-seven years old at the time of the ALJ's decision (Tr. 828).  He earned his GED, and attended one year of college (Tr. 828).  Slusher has past experience working as a fast food worker, electronics technician, security guard, shipping clerk, order picker, plumber's assistant, cashier, forklift operator, and a painter (Tr. 878-79).

## II.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The

3

Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  ANALYSIS

After reviewing the evidence of record, ALJ Beran determined that Plaintiff was not disabled (Tr. 15-30). On June 26, 2007, the ALJ issued her written opinion stating that Plaintiff suffered from the following severe impairments: seizure disorder, mild emphysema, a history of successful thoracotomy and mediastinotomy, mild degenerative disease of his spine with some congenital kyphosis, osteoarthiritis of the right ankle, hemorrhoids, alcohol abuse, affective disorders, and personality disorder (Tr. 19, 30). However, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19-23, 30). Next, ALJ Beran found that Plaintiff retained the RFC:

> to perform light exertional work, subject to the following: (1) no lifting and/or carrying of greater than 10 pounds frequently or 20 pounds occasionally; (2) no stand and/or walking for longer than two hours at a time or six hours total in a workday (no limitations to sitting); (3) no more than occasional bending or twisting; and (4) no workplace hazards or work-related driving. Mentally he is limited to simple tasks requiring no more than brief, superficial contact with others.

(Tr. 24, 30). Finally, the ALJ found that Plaintiff could perform his prior work as an order picker

and a painter (Tr. 29-30).

Slusher asserts that the Commissioner's decision denying his application for benefits should be remanded because the ALJ improperly found that Plaintiff did not equal Listing § 11.02(A) despite medical expert testimony to the contrary (Pl.'s Br. at 1). Plaintiff further maintains that substantial evidence does not support the ALJ's decision to discredit the medical expert testimony offered during the hearing, and that the ALJ erred in formulating Plaintiff's RFC.

### A. Whether Plaintiff Met or Equaled Listing § 11.02 Epilepsy

The Social Security regulations recognize epilepsy as a disabling condition. The regulations list specific criteria which must be present in order for a claimant to be determined disabled as a result of suffering from this condition. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02. Listing § 11.02 states:

> 11.02 Epilepsy–convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

*Id.* The listing also provides that "the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." *Id*. The Sixth Circuit has also stated that "[i]n order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (internal citations omitted).

5

1. Medical Expert Testimony

Medical expert, Dr. Jonathan Nusbaum (the "ME"), testified during the hearing conducted by ALJ Beran (Tr. 869-77).  After listening to Plaintiff's testimony, Dr. Nusbaum opined that Plaintiff equaled Listing § 11.02 from October of 2003 forward (Tr. 872).  The ME explained that his finding was based upon a combination of Plaintiff's frequent seizures, problems with chest pains and kiafa scoliosis of the lower thoracic spine (Tr. 872).  However, the ALJ rejected the ME's opinion, ruling that it was based "solely on the claimant's allegations of seizures without medical evidence to document the frequency of the same" and because the ME did not consider Plaintiff's lack of compliance with medication (Tr. 19-20).  The basis of the ME's opinion is contested by the parties.  Plaintiff argues that the ALJ should have accepted the ME's opinion because it was based not upon Plaintiff's testimony, but upon the record (Pl.'s Br. at 17).  On the other hand, Defendant maintains that it was proper for the ALJ to discredit the ME's opinion because the ME admitted that the record did not evidence whether Plaintiff suffered seizures more than once a month (Tr. 872-73) (Def.'s Br. at 12-13).

The Court finds that it was proper for the ALJ to reject Dr. Nusbaum's disability finding. As an initial matter, it is important to note that the ultimate question of disability and medical equivalence rests fully within the purview of the ALJ.  20 C.F.R. § 404.1526(e); 404.1527(e)(2). Thus, despite the recommendation of an ME, the ALJ may find that a claimant is not under a disability.  Here, the ALJ stated legitimate reasons for discounting the ME's testimony.  In order to meet Listing § 11.02, it was Plaintiff's burden to show that he suffered seizures at least twice a month.  However, Dr. Nusbaum indicated that "although [Plaintiff's] testimony is certainly that he has seizures once or twice a month, the record doesn't support seizures of quite that frequency, [even

though] not all seizures are going to be recorded in the record, necessarily" (Tr. 872). When the ALJ questioned Dr. Nusbaum to probe whether his determination was based upon Plaintiff's testimony that he suffered seizures at least once or twice a month, the ME responded that he was assuming that Plaintiff had seizures "frequently", but that he could not surmise from the record at what frequency they occurred (Tr. 873). Although the ME ultimately concluded that Plaintiff equaled the listing based on a combination of his impairments, rather than met the listing, it is clear that the ME's consideration of Slusher's frequent seizures was the impetus behind the ME's conclusion (Tr. 872-73). Accordingly, it was proper for the ALJ to analyze the ME's reasoning for finding that Plaintiff suffered frequent seizures.

Both parties agree that Plaintiff has a documented history of seizures. However, it was Plaintiff's burden to show that his seizures were so frequent as to render him disabled. The ME's finding presupposes that Plaintiff's frequency of seizures did not equal listing level until after October of 2003. Although Plaintiff now seeks to amend his onset dates to include a closed period from October 1, 2003 to December 31, 2004, and from March 7, 2006 to the present, it is unnecessary for the Court to change its review of the ALJ's decision, as ALJ Beran's opinion states that Plaintiff was not under a disability at any time through the date of her decision and Plaintiff's amended onset dates are within that time period (Tr. 30).[2] *See Odette v. Comm'r of Soc. Sec.*, No. 09-CV-11484, 2010 WL 2104300, at *10 (E.D. Mich. May 3, 2010); *see also Bunker v. Sec'y of*

---

[2]The Court rejects Plaintiff's arguments challenging the evidence cited by the ALJ dated prior to October of 2003. Despite the ME's finding that Plaintiff was disabled after October of 2003, it remained the ALJ's duty to determine whether Plaintiff was under a disability from the onset date alleged by Plaintiff during the application process, which was March 1, 2002. Plaintiff did not seek to amend his onset dates before the ALJ. In addition, Plaintiff seemingly admits that he was not disabled between January of 2005 and February of 2006, as his amended onset dates exclude this period of time.

7

*Health & Human Servs.*, 884 F.2d 578 (6th Cir. 1989) (unpublished). Accordingly, we will review the ALJ's finding that Slusher was not disabled as of his original onset date of March 1, 2002 through the date of the ALJ's decision.

While Plaintiff's brief purports to recite a chronological listing of his seizure and medication history, the list abruptly begins with activity from May of 2003 (Pl.'s Br. at 8). This is over a year after Plaintiff's original onset date. Regardless, it is questionable whether Plaintiff came forward with sufficient evidence to show that he suffered from frequent seizures even after October of 2003. Plaintiff gave many inconsistent statements to his healthcare providers regarding his seizure activity. For example, on January 19, 2004, he reported to the Orthopaedic Institute of Ohio that he had experienced four seizures during 2003 (Tr. 551); in contrast, two months later on March 30, 2004, he reported to Dr. B.T. Onamusi, that he had suffered approximately nine seizure episodes in 2003 (Tr. 540). Additionally, Slusher has not pointed to any evidence showing that he experienced frequent seizures in 2004. In February of 2004, Slusher informed his treating physician, Dr. Al-Khatib, that he had not experienced a seizure spell since December of 2003 (Tr. 601). In fact, according to Plaintiff's chronological treatment and seizure history provided in his brief, his first seizure in 2004 did not manifest until June, and prior to that he indicated that he had not experienced a seizure in four months (Tr. 579, 591-92).[3] This would mean that Plaintiff only experienced one or two seizures during the first six months of 2004. This number is far below the listing's criteria and contradicts Plaintiff's testimony regarding the number of seizures he experiences. Based upon this information it was proper for the ALJ to conclude that Plaintiff did not experience frequent seizures,

---

[3]Plaintiff experienced a single syncopal episode in May of 2004 (Tr. 579). However, the medical staff stated that it did not include seizure activity.

and therefore, the ME's reliance upon such a conclusion was unfounded.

Assuming *arguendo* that Plaintiff did offer proof that he suffered frequent seizure episodes, the ALJ was still entitled to discredit the ME's testimony based upon the ME's failure to consider Plaintiff's lack of compliance with treatment. A review of the record and briefs reveal that there are several documented instances of Plaintiff's failure to comply with his treatment regimen. As the ALJ mentioned, in May of 2003, Plaintiff reported to the emergency room complaining of chest pain and a seizure, and admitted that he was not on any medication for seizures (Tr. 372). Additionally, before Slusher's seizure in June of 2004, he reported that he stopped taking his blood pressure and seizure medication one month prior, and that he had consumed ten beers at a party the prior evening (Tr. 592). Finally, in March of 2006, Plaintiff stated that he had not taken seizure medication in two years (Tr. 696). The ALJ also commented on Plaintiff's history of blood test results showing subtherapeutic levels of seizure medication in his body (Tr. 20).

While Plaintiff's brief cites to instances where his doctors reported compliance with his medications as proof of his adherence to his treatment regimen, a review of those records does not move the Court to alter the ALJ's decision. Notably, several of the records Plaintiff relies upon merely contain his doctor's recitation of Plaintiff's self-reported compliance without medical tests confirming his claims. For example, in October of 2003, Dr. Al-Khatib's records state that Slusher is "very compliant with his medication", but the physician's report also states that Slusher's Dilantin level was not drawn (Tr. 603). The doctor's notes in February of 2004, report that Plaintiff's Dilantin level from October was low (Tr. 601). Similarly, Dr. Al-Khatib's treatment notes from December of 2003 comment that Plaintiff was compliant but again, do not indicate whether the doctor checked Plaintiff's blood drug levels to verify Plaintiff's statements. Rather, the doctor noted

9

that he planned to check Plaintiff's Dilantin levels (Tr. 602).

Although Slusher properly noted that some of the evidence relied upon by the ALJ was misplaced, i.e. records depicting instances when Plaintiff failed to take medication unrelated to his seizures (Pl's Br. at 17-18), the remaining proof relied upon by the ALJ supports her conclusion that Slusher was not compliant with taking his seizure medication. Any error committed by the ALJ was harmless because but for the mistake, the ALJ still would have reached the same conclusion. *See Bollenbacher v. Comm'r of Soc. Sec.*, 621 F. Supp.2d 497, 502 (N.D. Ohio 2008) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (citing *Korneck v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006)). Despite Slusher's argument that some of the records illustrating his lack of compliance are contradicted by other records in his file, the ALJ is responsible for deciding between conflicting evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). Therefore, because Plaintiff reported conflicting information to different doctors at various times, it was incumbent upon the ALJ to make a credibility determination regarding the veracity of Plaintiff's claims.

Slusher also argues that to the extent that he was not compliant with his seizure treatment, his non-compliance was due to his inability to afford his medication. When a claimant is non-compliant with treatment, the ALJ must consider the claimant's reasons for failing to seek and adhere to medical treatment. SSR 96-7p. However, in such cases, it is the claimant's responsibility to provide supporting evidence to show that he was unable to afford treatment, and that he pursued

10

other avenues to receive treatment.  *See Struchen v. Astrue*, No. 1:09-CV-2395, 2010 WL 3259895 (N.D. Ohio Aug. 17, 2010).  In the instant case, Slusher has not demonstrated that his non-compliance was mainly attributable to his inability to afford medication.  In addition, the ALJ indicated that Slusher was not compliant even when he had access to his medication (Tr. 20). Because the ALJ articulated sufficient reasons for discounting the ME's finding that Plaintiff met Listing § 11.02 as of October of 2003, the Court finds that the ALJ's decision to reject this testimony is supported by substantial evidence.

2.  Subtherapeutic Levels of Seizure Medication

Slusher also contends that the subtherapeutic levels of medication found in his blood, were a result of his body failing to properly absorb his medication (Tr. 849-50) (Pl.'s Br. at 18).  He alludes to the fact that the medical records showing low amounts of medication do not equate to him being non-compliant.  Instead, he alleges that he was compliant but that his blood drug levels did not accurately reflect his adherence to his treatment regimen.  The Social Security regulations recognize that a claimant's blood drug levels may be low due to his/her body's failure to adequately absorb medication.  The listing criteria for epilepsy states in pertinent part:

> When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be also assessed.

20 C.F.R. Part 404, Subpart P, Appendix 1.  SSR 87-6 also states that "[u]nless *convincing evidence*

is provided that subtherapeutic blood drug levels are due to abnormal absorption or metabolism, and the prescribed drug dosage is not itself inadequte [sic], the conclusion should follow that the individual is not complying with the treatment regimen." SSR 87-6 (emphasis added).

Under this framework, Plaintiff carried the burden of showing that his low blood drug levels were a result of his inability to properly absorb his medication. Listing § 11.02 specifically states that the claimant's treating source should explain why the claimant's levels are low. Slusher has not submitted any evidence to this Court illustrating that his treating physician(s) diagnosed him as having a problem with absorption of his seizure medication. Likewise, he has not demonstrated that he submitted any such proof to ALJ Beran. It is true that the ME testified that a failure to absorb medication would reasonably explain Plaintiff's low drug levels (Tr. 871-72); however, the ME's testimony is merely consistent with what the Social Security regulations already state. The regulations themselves acknowledge that a failure to absorb will cause low drug levels. Unfortunately, the ME's testimony did not provide ALJ Beran with definitive proof that *Slusher's* subtherapeutic blood levels were caused by inadequate absorption. As previously stated, Plaintiff has not pointed to any convincing evidence supporting the notion that he has a diagnosed problem with absorption. Without presenting convincing evidence that his low drug levels were a direct result of a physical inadequacy, the ALJ was free to reject Plaintiff's unconfirmed statements.

### 3. Plaintiff's Alcohol Use

The Social Security listing for epilepsy also admonishes the ALJ to consider the claimant's use of alcohol and drugs when evaluating the claimant's level of impairment. Specifically, it reads "[w]here documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall

assessment of impairment level." 20 C.F.R. Part 404, Subpart P, Appendix 1. In addition, SSR 87-6 states that "[i]n a substantial number of cases, use of alcohol has been found to be a contributory basis for the individual's failure to properly follow prescribed treatment. In such cases, the individual's alcohol abuse should be evaluated." SSR 87-6. Dr. Nusbaum also testified that alcohol use markedly lowers an individual's seizure threshold (Tr. 874).

ALJ Beran cited numerous examples of instances where Plaintiff's alcohol abuse was noted in his medical file. While in the emergency room following his seizure in June of 2004, Plaintiff admitted that he had consumed ten beers at a party the previous evening (Tr. 592). In June of 2006, his physicians remarked that Slusher "ha[d] a history of drinking excessively" (Tr. 744). Notably, in August of 2006, Plaintiff's neurologist opined that he suffered a seizure secondary to alcohol abuse (Tr. 786). Accordingly, it was proper for the ALJ to factor Slusher's alcohol use into her analysis of whether he was disabled. For the reasons discussed herein, the Court finds that ALJ Beran's finding that Plaintiff did not meet or equal Listing § 11.02(A) is supported by the record. Although is it clear that Plaintiff's seizures plague him, his lengthy history of non-compliance with his medical treatment and alcohol abuse mitigate against finding that his seizures rendered him disabled. As a consequence, the Court declines Slusher's request to award benefits or to remand the case, as ALJ Beran properly weighed all the evidence in the record, and came to a justifiable conclusion.

### B. Whether Plaintiff Could Perform Past Work

Finally, Slusher challenges the ALJ's ruling that he could return to his past work as an order picker and a painter. In doing so, Slusher asserts that the ALJ's RFC did not include any limitations related to Plaintiff's seizure disorder. Plaintiff also argues that the hypothetical question ALJ Beran

13

posed to the vocational expert, Richard Oestreich (the "VE"), did not include all of Plaintiff's symptoms, specifically, Plaintiff's repeated diarrhea caused from his medication.

Plaintiff's suggestion that the ALJ's RFC does not include consideration of his seizure disorder is not entirely true.  The ALJ asked the ME to offer his opinion as to Plaintiff's RFC, eliminating the *frequency* of seizures asserted by Plaintiff (Tr. 875-76).  In response, the ME articulated the same RFC which the ALJ adopted in her written opinion (Tr. 876).  The ME acknowledged that his RFC was assuming that Plaintiff's seizures occurred on a "less frequent basis" than what Plaintiff claimed during the hearing (Tr. 876).  Thus, the RFC adopted by the ALJ did take Plaintiff's seizures into consideration – just not at the increased frequency that Plaintiff alleged.  ALJ Beran concluded that the record did not support a finding that Plaintiff suffered uncontrolled frequent seizures, and therefore, she was not obligated to include the effects of more frequent seizures into her RFC.  Because the ME's RFC accounts for seizures, albeit on a less frequent basis than Plaintiff claimed, the RFC articulated to the VE conveyed an accurate portrayal of Plaintiff's physical capabilities and limitations.

Slusher further claims that the ALJ's hypothetical question posed to the VE was inadequate because it did not mention Plaintiff's diarrhea, which he alleges is a side effect of his medication.  Plaintiff testified that he experiences diarrhea between eight and ten times per day (Tr. 868).  The ME also confirmed that the side effect of diarrhea was consistent with Plaintiff's medication.  However, the ME also told the ALJ that there were other seizure medications which could eliminate or reduce this side effect (Tr. 877).  Dr. Nusbaum further commented that he did not observe any records in Plaintiff's file showing where a different medication was prescribed to Plaintiff to better control his diarrhea.

14

Undoubtedly, it is essential for the ALJ to integrate the disabling side effects of a claimant's medication into the hypothetical question posed to the VE. Yet, "[i]f the [ALJ's] hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *See Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987). Unfortunately for Slusher, he neglected to offer the ALJ evidence illustrating that his repeated episodes of diarrhea were a direct result of his medication, or any medical records documenting the alleged severity and frequency of this side effect. As ALJ Beran duly stated "the record is completely devoid of complaints concerning such side effects, which certainly would not be expected were the side effects as severe or as frequent as alleged" (Tr. 28). In fact, the record contains evidence to the contrary, showing that Plaintiff did not complain about any diarrhea to his doctor, and told his physician that he did not have any complaints regarding his medication and suffered no side effects (Tr. 601-04). As the Sixth Circuit has held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Smith v. Astrue*, 639 F. Supp.2d 836, 856 (W.D. Mich. 2009) (citing *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 800-01 (6th Cir. 2004). As a consequence, the Court rules that ALJ Beran's hypothetical question was supported by the evidence in the record.

## V. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Court AFFIRMS decision of the Commissioner.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: March 14, 2011.